[Cite as *State ex rel. DeWine v. C&D Disposal Technologies, L.L.C.*, 2012-Ohio-3005.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO, ex rel.        )
MICHAEL DeWINE,           )     CASE NO. 11 JE 19
OHIO ATTORNEY GENERAL,   )
                            )
     PLAINTIFF-APPELLANT,    )
                            )
     - VS -                 )     OPINION
                            )
C&D DISPOSAL TECHNOLOGIES, LLC,)
JOSEPH G. SCUGOZA, AND    )
CROSSRIDGE, INC.,        )
                            )
     DEFENDANTS-APPELLEES.  )

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
                                     Court, Case No. 99 CV 137.

JUDGMENT:                       Reversed and Remanded.

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich

Dated: June 29, 2012

[Cite as *State ex rel. DeWine v. C&D Disposal Technologies, L.L.C.*, 2012-Ohio-3005.]

APPEARANCES:

For Plaintiff-Appellant:

Michael DeWine
Ohio Attorney General
Julianna Bull
Robert Eubanks
Assistant Attorneys General
30 E. Broad Street, 25th Floor
Columbus, OH  43215-3400


For Defendants-Appellees:

Attorney Michael Cypher
Attorney Leslie G. Wolfe
Walter & Haverfield, LLP
The Tower at Erieview
1301 East 9th Street, Suite 3500
Cleveland, OH  44114
For C&D Technologies, LLC


Crossridge, Inc., Pro-se
No Brief Filed

DeGenaro, J.

{¶1} Plaintiff-Appellant, the State of Ohio, appeals the May 4, 2011 judgment of the Jefferson County Court of Common Pleas dismissing the State's written contempt charges against Defendants-Appellees, C&D Disposal Technologies, LLC, Joseph G. Scugoza and Crossridge, Inc., which alleged that Appellees failed to comply with a 2003 Consent Order. On appeal, the State argues that the dismissal was erroneous for several reasons. Upon review, the trial court erred by dismissing the contempt motion on the merits, without holding an evidentiary hearing as requested by both parties. Accordingly, the judgment of the trial court is reversed and remanded for a show cause hearing.

## Facts and Procedural History

{¶2} The facts of this case are not disputed. On April 9, 1999, the State filed a complaint for injunctive relief and civil penalty in the Jefferson County Court of Common Pleas against Appellee Crossridge, Inc. and its principal shareholder, Joseph N. Scugoza, who died after the commencement of the suit. The complaint alleged that Crossridge and Scugoza failed to comply with Ohio environmental laws and regulations with respect to a landfill they operated in Jefferson County, Ohio. After several years of litigation, the parties entered into a Consent Order, which was signed and journalized by the trial court on October 8, 2003. The Consent Order recites that it was entered into by the State, Crossridge and Appellee C&D Disposal Technologies, LLC as guarantor. That is, C&D "consented to be a party defendant to [the] action and agree[d] to guarantee Crossridge's compliance with the injunctive provisions set forth in Paragraphs 7 through 16 and the payment of the civil penalty required by paragraph 18 of this Order."

{¶3} Paragraphs 7 through 16 of the Consent Order described what Crossridge and C&D must do to discharge their environmental liabilities, which included completing the closure of the Crossridge facility under an agreed timeline, submitting all the required closure certifications, submitting and implementing a ground water detection monitoring plan under an agreed timeline, submitting an explosive gas monitoring plan, establishing and funding financial assurance for final closure and post-closure care of the facility, operating and maintaining the leachate

management system under an agreed timeline, implementing surface water and sediment controls under an agreed timeline, and conducting post-closure care activities at the facility for no less than thirty years.

{¶4} Further, the Consent Order imposed a civil penalty to be paid in eight equal installments over a period of approximately 21 months, with the first payment due one year from the "Start Date," defined as "the later of January 2, 2004 or the date C&D Disposal or any affiliate company obtains a financing commitment or funding for, at least, 90% of the estimate costs of complying with Paragraphs 7 through 16 of this Order, but in no event later than January 2, 2005." In Paragraph 4.c of the Consent Order, the State reserved its right to enforce the Order through a contempt action or otherwise. As a part of the Order, the State also agreed to voluntarily dismiss its claims against the Estate of Scugoza, which it did, without prejudice, on October 8, 2003.

{¶5} On March 23, 2011, the State filed "Written Charges in Contempt and Request for a Hearing." Therein, the State alleged that Appellees had failed, by the deadlines set forth in the 2003 Consent Order, to (1) complete the final closure of the facility, (2) submit a final closure certification report; (3) implement a ground water monitoring plan; (4) commence monitoring for explosive gas in accordance with an approved plan; and (5) establish and fund financial assurance for final closure and post closure care.

{¶6} A phone conference was held between the court, the assistant attorney general and counsel for C&D on March 31, 2011. As a result of that conference, the court ordered Appellees to file a brief in response to the State's contempt motion before Monday April 4, 2011, and ordered the State to file a reply before April 18. Finally, the court ordered that "it will decide said matters and issues [sic] further orders without an oral hearing." On April 4, 2011, the parties appeared in court for this and other matters and counsel agreed they had no witnesses to present with regard to the contempt motion and that they wished to have the matter decided on the briefs per the schedule set forth in the March 31 order.

{¶7} That same day, Appellees filed their brief, arguing that an intervening

settlement agreement, signed by the counsel for both parties and dated October 15, 2007, substantially modified the 2003 Consent Order. The 2007 settlement agreement was attached to their brief. Notably, the State failed to mention the existence of the 2007 agreement in its show cause motion.

{¶8} The 2007 agreement recites:

Pursuant to our discussions, C&D Disposal Technologies, LLC ("C&D") and the Ohio Environmental Protection Agency ("OEPA") have agreed to settle the issues currently pending as to both the noncompliance with the terms of the above referenced Consent Order ("Consent Order") and all cited violations outstanding prior to the date of this agreement as follows: * * *

{¶9} The agreement then goes on to state various actions that C&D agreed to take pursuant to the settlement, including: payment of the civil penalties due under the 2003 Consent Order, the posting of a closure bond within 45 days of signing the agreement; and various actions to address continued environmental violations. New time-tables were set for the completion of these actions.

{¶10} Importantly, the 2007 agreement also contains the following provision:

For as long as this agreement is complied with, the Ohio EPA will forgo its rights under provision 4c of the Consent Order to enforce the provision of the Consent Order, through a contempt action or otherwise, for violations of the Consent Order resolved through this agreement.

{¶11} Appellees argued that the State's failure to acknowledge the existence of the 2007 Agreement was fatal to its contempt motion since R.C. 2705.02 *et seq.* required the State to specify how the alleged contempt was committed. Appellees asserted that this inadequacy made it impossible for them to defend themselves and therefore moved the court to dismiss the contempt motion. Alternatively, Appellees requested an evidentiary hearing on the motion.

{¶12} The State filed a reply brief on April 18, 2011, in which it admitted it had entered into the 2007 Agreement, but essentially argued it was "irrelevant." Alternatively, the State argued that Appellees were also in violation of the 2007 agreement. Due to Appellees' alleged noncompliance with the 2007 agreement, the State claimed it was properly exercising its right to enforce the 2003 Consent Order via a contempt action. The State also requested further hearing on the motion.

{¶13} On May 4, 2011, the trial court issued a judgment entry overruling and dismissing the State's contempt motion, and denying the request for further hearing. The trial court concluded the documents submitted with the parties' briefs established that they entered into a settlement agreement on October 15, 2007 that constituted an agreement to amend the 2003 Consent Order. The trial court found that because the contempt motion did not allege noncompliance with the 2007 settlement agreement it did not properly allege a violation of the 2003 Consent Order.

## Final Appealable Order

{¶14} Before turning to the merits of the appeal, we must determine whether the trial court's dismissal constitutes a final, appealable order. "[T]here is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." *Denovchek v. Bd. of Trumbull County Commrs.*, 36 Ohio St.3d 14, 520 N.E.2d 1362 (1988).

{¶15} Here, the State was prejudiced by the dismissal. The trial court determined that the State failed to allege any violation of the 2003 Consent Order since that order was amended by the 2007 settlement agreement. This case is readily distinguishable from *Denovchek*. There, a non-party witness failed to appear for trial, despite being subpoenaed. The appellant, Denovchek, did not request a continuance or claim prejudice. The matter proceeded to trial and a final judgment was entered, which was affirmed on appeal. Denovchek separately filed a show cause motion regarding the absent witness, which the trial court dismissed, because of improper service of process. The Ohio Supreme Court concluded the dismissal of the contempt motion was not a final appealable order because Denovchek could not demonstrate

how he was prejudiced:

> Appellant, in this appeal, does not seek a benefit other than that of establishing a principle and seeing [the absent witness] punished. Appellant's underlying action on the merits has run its course and the appellate procedure has been exhausted.

*Id.* at 16.

**{¶16}** By contrast, the contempt dismissal in this case involved a party to the lawsuit, and concerned a central issue in the case, i.e., whether Appellees were in compliance with environmental regulations. *See generally State ex rel. DeWine v. Miller*, 194 Ohio App.3d 86, 2011-Ohio-2107, 954 N.E.2d 1247 (10th Dist.) (entertaining State's appeal from a dismissal of its contempt motion in an environmental enforcement action).

**{¶17}** Further, the trial court's judgment entry dismissing the contempt charges did not specify that it was "without prejudice." Absent that specification, we must presume the trial court adjudicated the matter on the merits, and therefore dismissed the motion with prejudice, thereby precluding the State from refiling contempt charges based upon that same alleged noncompliance. *See* Civ.R. 41(B)(3): "A dismissal under division (B) of this rule *and any dismissal not provided for in this rule*, except as provided in division (B)(4) of this rule, operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." (Emphasis added.) Accordingly, we conclude that the trial court's dismissal of the contempt motion in this instance is final and appealable.

**Dismissal of Contempt Motion**

**{¶18}** The State asserts three assignments of error on appeal, which are related and will be discussed together:

**{¶19}** "The Common Pleas Court committed legal error when it overruled and dismissed the State's Contempt Charges, which were plead [sic] in accordance with the guidelines of R.C. 2705.03."

{¶20} "The trial court committed legal error when it dismissed the State's Contempt Charges because the State did not reference an extra-judicial agreement amongst the parties."

{¶21} "The trial court erred when it held that the State's Contempt Charges did not plead violation [sic] of the non-memorialized 2007 Agreement."

{¶22} A pervasive argument throughout the State's assignments of error is that the trial court erred by dismissing its contempt motion without first holding a full evidentiary hearing to allow both parties to present evidence and defenses, as applicable.

{¶23} As this court has recently explained in *State ex rel. Cordray v. Tri-State Group, Inc.* 7th Dist. No. 07-BE-38, 2011-Ohio-2719, ¶58, in a civil contempt proceeding, such as this one:

> the initial burden is on the movant to prove by clear and convincing evidence that the other party violated a court order. *Carroll v. Detty* (1996), 113 Ohio App.3d 708, 711, 681 N.E.2d 1383, citing *Brown*, 64 Ohio St.2d 250, 416 N.E.2d 610. Once the movant has met this burden and established a prima facie case by clear and convincing evidence, the burden shifts to the non-moving party to either rebut the initial showing of contempt or establish an affirmative defense by a preponderance of the evidence. *Young v. Young* (May 7, 2001), 7th Dist. No. 00-BA8, citing *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 472 N.E.2d 1085.

{¶24} A trial court's decision with regard to a contempt motion is reviewed for an abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 520 N.E.2d 1362 (1981); *Ross v. Olsavsky*, 7th Dist. No. 09 MA 191, 2011-Ohio-1655, ¶14. An abuse of discretion means more than an error of judgment, but rather that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶25} Here, the State's initial motion made out a prima facie case that

Appellees violated the 2003 Consent Order. The burden shifted to Appellees to rebut that showing or establish an affirmative defense, which they attempted to do in their responsive pleading, arguing that the 2007 Agreement modified the terms of the 2003 Consent Order. The State responded that Appellees had also failed to comply with the 2007 Agreement, the new deadlines therein having also passed. Both parties requested further hearing on the motion so they could present evidence.

{¶26} Two subsections of the contempt statute discuss hearings. First, R.C. 2705.03 provides:

> In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings.

{¶27} R.C. 2705.05(A) also states, in pertinent part:

> In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties: * * *.

{¶28} As the Tenth District has explained in *Hillman v. Edwards*, 10th Dist. No. No. 10AP-950, 2011-Ohio-2677:

> The purpose of a contempt hearing is to provide the accused with the opportunity to explain his actions. *Fant v. Bickerstaff* (July 1, 1999), 8th Dist. No. 72124. In contempt proceedings, the statutory provisions and due process require that the accused be provided an opportunity to be

> heard, but it is within the trial court's discretion whether to give the complainant a hearing. *Taylor v. Taylor* (May 27, 1993), 8th Dist. No. 62249, citing *Perry v. Emmett* (June 16, 1988), 8th Dist. No. 53997.

*Hillman* at ¶29.

**{¶29}** Under the facts and circumstances of this case, the trial court abused its discretion by dismissing the contempt motion without holding an evidentiary hearing so that it could more fully explore the merits of the alleged contempt, Appellees' affirmative defense, which concerned the 2007 Agreement, and with the State's response to the affirmative defense, namely that Appellees have also failed to comply with the 2007 Agreement. According to the record before us, the State is correct in its assertion that by the time it filed its show cause motion in 2011, many of the new deadlines set forth in the 2007 Agreement had long since passed. However, the proper forum to explore these and other issues is at a hearing before the trial court.

**{¶30}** In sum, the trial court's dismissal of the State's contempt motion was a final, appealable order. Under the unique facts of this case, the trial court abused its discretion by failing to hold an evidentiary hearing on the show cause motion to determine, among other things, the merits of Appellees' affirmative defense. Accordingly, the State's assignments of error are meritorious in part. The State's other arguments are rendered moot. The judgment of the trial court is reversed and the cause remanded for further hearing on the motion.

Waite, P.J., concurs.

Vukovich, J., concurs.